IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| A.V. AVINGTON, JR., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14-CV-233-JED-PJC |
| v. | ) | |
| | ) | |
| MAXIM HEALTHCARE SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

**I.    The Complaint**

The following facts are alleged in the Amended Complaint, which was filed by the plaintiff, A.V. Avington, Jr. (Avington), acting pro se. Avington was employed by the defendant, Maxim Healthcare Services, Inc., d/b/a Maxim Staffing Solutions (Maxim) from November 1, 2012 to May 28, 2013. He was qualified and "particularly suited" for placement as a Certified Nurse Aide (CNA) and a Certified Home Health Aide (HHA). On December 15, 2012, soon after he began with Maxim, plaintiff filed an internal grievance, "trying to get some answers as to why he was being overlooked for job assignments after being hired to work."

Thereafter, Avington was given regular working hours, which included traveling in Oklahoma for work. He complained to a manager about job assignments because gout affected his ability to stand and work long hours. Because medications helped the condition, Avington continued to accept jobs that were offered to him in Stillwater and Cushing, Oklahoma, but the standing that was required for those jobs was difficult. He therefore asked Maxim to offer him assignments as a private duty nurse in homes, hospitals, or long term care facilities. Maxim

informed him that he would need HHA Certification in order to work one-on-one in private care assignments.

Avington received his HHA Certification on April 1, 2013, but Maxim told him that there was no private duty work available at that time. In that time-frame, Avington worked at Colonial Manor Nursing Center (Colonial) for approximately two months, until he was informed by Maxim on May 28, 2013 that Colonial had reported that Avington "was to never, ever come back ... again or [he] would be arrested," because Avington had been accused of being physically and verbally abusive toward patients at Colonial while he worked there. Avington denies that he abused any patients. After May 28, 2013, Maxim would not talk to him, and he received no further assignments, such that he was terminated.

As to the basis for his discrimination claims, Avington merely states that he "believes" the foregoing "indicates that the matter complained of is subject to" Title VII and the Age Discrimination in Employment Act (ADEA).[1] He asserts five distinct claims against the defendant. His first claim asserts employment discrimination based on race. He alleged that he is a "Black African American" and that he was treated differently than "white Caucasian" CNAs being assigned to jobs. His second cause of action is for Retaliation. The allegations under that claim are very general and mostly recite legal principles rather than the actual facts supporting alleged retaliation. Instead, the second claim asserts in conclusory fashion that, after Avington lodged the grievance with Maxim in December 2012, he was subjected to "denial of promotion, refusal to hire, denial of job benefits, demotions, suspensions, and discharge, threats,

---

[1] Although Avington also references the Americans with Disabilities Act (ADA), he has not asserted any actual claim under that statute. (*See* Amended Complaint, Doc. 4 at 6-12 [identifying five claims, none of which arise under the ADA]).

reprimands[,] negative evaluations, [and] harassments...." There are no specific factual allegations that support those conclusory statements.

Avington's third claim is for age discrimination. At the time he filed the Complaint, Avington was 58 years old. That is the only allegation that supports his claim for age discrimination. The fourth claim is for an alleged failure to promote Avington to Certified Home Health Care Specialist. The fifth and final claim is for disparate treatment by failing to place him on job assignments because of his race and age.

Maxim seeks dismissal of the Amended Complaint on multiple grounds. Initially, Maxim moves pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the Court lacks subject matter jurisdiction because Avington's charge of discrimination with the Equal Employment Opportunity Commission (EEOC) does not encompass two of the claims asserted in this lawsuit. Maxim also argues that the Complaint does not state any claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Avington responded to the dismissal motion, but provided no explanation or argument regarding the specific deficiencies raised in Maxim's motion. Avington instead simply requested leave to amend his Amended Complaint and stated that, if permitted to amend, Avington "would cure any 'complained of' defects...."

## II. Discussion

### A. Subject Matter Jurisdiction

Citing law that has been well-established in this Circuit for several years, Maxim argues that the Court lacks subject matter jurisdiction over Avington's claims for disparate treatment and a failure to promote, because his charge of discrimination does not fairly encompass those claims. (Doc. 11 at 5-6). However, the Tenth Circuit has very recently called into question some of the authorities upon which Maxim's arguments depends. *See Gad v. Kansas State*

*Univ.*, 787 F.3d 1032, 1039-40 (10th Cir. May 27, 2015) (citing *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) and calling into doubt prior determinations that all exhaustion requirements are jurisdictional).

In *Gad*, the Tenth Circuit noted that Supreme Court cases have tended to classify a particular statutory requirement based on whether or not the requirement is located in Title VII's jurisdictional subsection, 42 U.C.S. § 2000e-5(f)(3). The *Gad* court indicated that "Title VII specifically [grants] subject-matter jurisdiction as a general matter in ... § 2000e-5(f)(3)," which provides that "[e]ach United States district court ... shall have jurisdiction of actions brought under [Title VII]." *Gad*, 787 F.3d at 1035, n.2 (quoting § 2000e-5(f)(3)). "But as a condition to filing suit in federal court, Title VII also requires claimants to submit a 'charge' to the EEOC, ... [which] must 'be in writing under oath or affirmation' and 'contain such information and be in such form as the [EEOC] requires.'" *Id.* (quoting 42 U.S.C. § 2000e-5(b)). The court determined that the requirement that the charge be verified was not jurisdictional. *Id.* at 1039-40. Applying Supreme Court case law, the Circuit noted that "we should not treat requirements as jurisdictional without express congressional direction." *Id.* at 1040 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) and *Sebelius v. Auburn Reg'l Med. Ctr.*, __ U.S. __, 133 S. Ct. 817, 824 (2013)).

In the present case, Avington filed a charge of discrimination with the EEOC, and the defendants acknowledge that some of Avington's claims were exhausted because they were asserted, at least generally, in that charge. Thus, the only question relates to the scope of the claims that are covered in Avington's EEOC charge. Because the jurisdictional provision of Title VII generally confers subject matter jurisdiction on the Court for at least the claims asserted in the charge of discrimination, the Court will decline to dismiss for lack of subject matter

jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Gad*, 787 F.3d at 1035, n.2; 42 U.S.C. § 2000e-5(f)(3).

However, Avington is not relieved of the obligation to have exhausted each claim asserted in his Amended Complaint, because the Tenth Circuit still considers full exhaustion to be required as a condition precedent to suit. *Arabalo v. City of Denver*, ___ F. App'x ___, 2015 WL 5235740, **11-12 (10th Cir. Sept. 9, 2015) (declining to determine "whether exhaustion is a jurisdictional bar," because "[e]ven if administrative exhaustion is only a condition precedent to suit, [a plaintiff must still] exhaust her administrative remedies for" each claim); *see also Gad*, 787 F.3d at 1040 ("Holding [a specific exhaustion requirement to be] non-jurisdictional does not imply any diminution in the need for plaintiffs to comply with [the exhaustion] requirement," and a defendant "may still achieve the dismissal of a plaintiff's suit" based upon the failure to so comply). Accordingly, the Court will consider the exhaustion arguments, as well as Maxim's arguments that the Complaint fails to state a claim upon which relief may be granted, under Fed. R. Civ. P. 12(b)(6), rather than the jurisdictional framework of Fed. R. Civ. P. 12(b)(1).

### B. Dismissal Motion under Rule 12(b)(6)

#### 1. Standards

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is

5

plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56, 570 (citations omitted). Twombly articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to claimant. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

Pleadings of a pro se plaintiff must be liberally construed and "h[e]ld to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a district court should not assume the role of advocate, and plaintiff must "alleg[e] sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("rule of liberal construction [of pro se filings] stops, however, at the point at which we begin to serve as his advocate."). To this end, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110. Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and substantive law, and the liberal construction to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir.1994); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir.1997).

## 2. Failure to Promote Claim

As noted, a plaintiff must exhaust administrative remedies with respect to each Title VII claim before filing suit. *See Gad*, at 1040; *Arabalo*, at **11-12; *see also MacKenzie v. City & Ct. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) ("A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC"). The courts construe EEOC charges liberally when "determining whether administrative remedies have been exhausted as to a particular claim." *Jones v. U.P.S.*, 502 F.3d 1176, 1186 (10th Cir. 2007).

Maxim argues that Avington's fourth claim, which alleges a failure to promote (Doc. 4 at 11), should be dismissed because his charge of discrimination did not include any allegations that would have prompted any investigation of such a claim by the EEOC. A review of Avington's charge of discrimination confirms that there was no such reference or allegations regarding any failure to promote. (Doc. 11-1).[2] The charge did not: include any allegation of a failure to promote; indicate that Avington sought any promotion; or allege that he was denied any promotion for a discriminatory reason.

---

[2] While a district court's consideration of a Rule 12(b)(6) motion to dismiss for failure to state a claim is normally limited to the allegations in the complaint, the "court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Desert Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *see also Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013). Avington references the charge in his Amended Complaint (Doc. 4 at ¶ 3), Maxim provided a copy of the charge with its dismissal motion (Doc. 11-1), and Avington does not contest its authenticity. Pursuant to the foregoing authorities, the Court may therefore consider the charge in the context of ruling on the Rule 12(b)(6) dismissal motion.

Accordingly, the Court concludes that the failure to promote claim should be dismissed for the failure to exhaust that claim. The dismissal should be with prejudice, as the time within which to exhaust that claim has long expired.[3]

### 3. Disparate Treatment Claim

Maxim argues that Avington also failed to exhaust his fifth claim, which alleges disparate treatment. Although Avington generally references Title VII's prohibition of disparate treatment based on race, color, religion, sex, or national origin, the fifth claim in Amended Complaint only alleges such treatment based on race and age. (*See* Doc. 4 at ¶¶ 62, 64). Avington's EEOC charge of discrimination did not refer to "disparate treatment," but he did very generally assert race and age discrimination and allege that the stated reason for his termination was a pretext. (Doc. 11-1 at 2). Construed very liberally, these could be considered to reference and allege disparate treatment based on age and race, as he has asserted in his fifth claim of the Complaint. Accordingly, dismissal for failure to exhaust the disparate treatment claim based on race and age is not appropriate.

Maxim contends that any claim based on color, religion, sex, or national origin was not exhausted by the allegations of the charge. While the Court agrees that there are no *facts* alleged to support any claim of sex discrimination, the charge does facially allege such a claim, such that dismissal for a failure to exhaust would be inappropriate. However, the Court considers that of little consequence, because Avington's Amended Complaint cannot be read to include any claim for sex discrimination in any event. As noted above, the fifth claim generally references Title

---

[3] In a deferral state like Oklahoma, a Title VII charge "shall be filed" with the EEOC within 300 days "after the alleged unlawful employment practice occurred...." 42 U.S.C. § 2000e-5(e)(1); *see Peterson v. City of Wichita, Kansas*, 888 F.2d 1307, 1308 (10th Cir. 1989). "A discrete retaliatory or discriminatory act 'occurred' on the day that it happened.' A party, therefore, must file a charge within ... 300 days of the date of the act or lose the ability to recover for it." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

8

VII's prohibition of disparate treatment based on race, color, religion, sex, or national origin, but it only alleges such treatment based on race and age. (*See* Doc. 4 at ¶¶ 62, 64). If any sex discrimination claim had been asserted, it would be dismissed under Fed. R. Civ. P. 12(b)(6), because no facts have been asserted that would state any plausible claim for sex discrimination.

Maxim is correct that Avington did not check the boxes on the charge to indicate discrimination based on color, religion, or national origin, and did not include any facts that could be liberally construed to include such claims. (*See* Doc. 11-1). Avington's charge is also devoid of any allegations that would give rise to an EEOC investigation based upon religious or national origin discrimination. Again, however, the Court does not read the Amended Complaint to assert any such claims anyway. If he had attempted to assert any such claims, they would be dismissed with prejudice as barred for the failure to exhaust.

Although Avington checked the box on the charge to indicate discrimination based on "race," he did not do so for "color." Title VII includes "color" discrimination as well as "race" discrimination, and the EEOC and courts that have addressed the issue treat those terms as distinct. *See, e.g.*, *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002) ("Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African–American individual is discriminated against in favor of a light-colored African–American individual."); *U.S. Equal Employment Opportunity Commission*, Facts About Race/Color Discrimination, http://www.eeoc.gov/facts/fs-race.html ("Even though race and color clearly overlap, they are not synonymous. Thus, color discrimination can occur between persons of different races or ethnicities, or between persons of the same race or ethnicity. Although Title VII does not define "color," the courts and the Commission read "color" to have its commonly understood meaning

– pigmentation, complexion, or skin shade or tone. Thus, color discrimination occurs when a person is discriminated against based on the lightness, darkness, or other color characteristic of the person."). Although Avington refers to his color as "Black" in his Amended Complaint, there are no factual allegations that distinctly allege any "color" discrimination as it has been distinguished from "race" in the foregoing authorities. If Avington had attempted in his fifth claim to assert any claim for discrimination based on color, that claim would be barred for failure to exhaust it.

Although the disparate treatment claim based on race and age was asserted in the charge of discrimination, such that dismissal on exhaustion grounds would be improper, the Court agrees with Maxim that the disparate treatment claim is merely redundant of the first and third claims asserted by Avington in his Amended Complaint. Accordingly, the disparate treatment claim will be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

### 4. Race Discrimination Claim

Maxim asserts that Avington has failed to state a plausible claim for race discrimination. The Court agrees. "To set forth a prima facie case of discrimination, a plaintiff must establish that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Aside from a formulaic recitation of the elements of such a claim, Avington has not alleged any *facts* which, if taken to be true, would state a plausible claim that he was discriminated based upon his race. Rather, he has provided only allegations that "are so general that they encompass a wide swath of conduct, much of it innocent," which is insufficient to "nudge[ ] [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)

(quoting *Twombly*, 550 U.S. at 570). For example, Avington has not identified any similarly-situated Caucasian employees who were treated better than him in job assignments or receipt of job-related benefits. Avington has also failed to aver any facts supporting any claim that he was terminated because of his race. It is not enough to merely allege that he is African American and was terminated, which is in essence all that he has factually asserted in his Amended Complaint. Avington's first claim, for discrimination based on race, is hereby dismissed without prejudice.

### 5. Retaliation Claim

Maxim contends that Avington's retaliation claim should also be dismissed, as Avington has failed to allege facts sufficient to state a plausible claim for retaliation under Title VII. It is unlawful under Title VII for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). A plaintiff can establish retaliation directly, by showing that retaliation played a motivating part in the challenged employment decision, or indirectly, by stating a prima facie case for retaliation, which requires a showing that (1) he "engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Khalik*, 571 F.3d at 1192-93 (10th Cir. 2012). Avington has not provided facts that would plausibly state a claim for retaliation. While he asserts that he was subject to "extreme conduct ... as an act of retaliation," Avington has not alleged any facts that describe any purported extreme conduct or that come close to plausibly alleging causation. His retaliation claim, which is his second claim in the Amended Complaint, is dismissed for failure to state a claim upon which relief can be granted. The dismissal is without prejudice.

### 6. Age Discrimination Claim

To state a plausible claim for age discrimination, a plaintiff must allege that he (1) is a member of the class protected by the ADEA (i.e. he is over 40 years old), (2) suffered an adverse employment action, (3) was qualified for the position, and (4) was treated less favorably than others not in the protected class. *Sanchez v. Denver Pub. Schools*, 164 F.3d 527, 531 (10th Cir. 1998). An ADEA plaintiff must also ultimately establish that "age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). Avington asserted that he was 58 at the time he filed the Amended Complaint. He also states that he "believes" that Title VII and the ADEA are implicated in this case, but he has asserted no *facts* to support that conclusory assertion, and he has not identified any persons outside the ADEA-protected class who were treated differently than he was. There are simply no allegations which state any plausible claim under the ADEA. That claim is hereby dismissed without prejudice.

### III. Conclusion

For the foregoing reasons, Maxim's motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Doc. 11) is hereby **granted**. The fourth claim of the Amended Complaint, for failure to promote, is **dismissed with prejudice**, as that claim was not timely exhausted. Avington's first claim (for race discrimination), second claim (for retaliation), third claim (for age discrimination), and fifth claim (for disparate treatment based on race and age) are hereby **dismissed without prejudice**.

Avington has requested leave to amend, asserting that he can cure all defects in the Amended Complaint. That request (Doc. 15) is **granted in part**, as follows. If desired, Avington may amend in an attempt to state plausible claims for race discrimination, age

discrimination, and retaliation, and any such amendment shall be filed by **October 14, 2015**.[4]

No other or new claims shall be inserted in any amendment.

SO ORDERED this 30th day of September, 2015.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[4] As noted above, the claim for disparate treatment based on race and age (fifth claim) is redundant of the separate race and age discrimination claims asserted in the first and third claims of the Amended Complaint. Although the redundant claim is dismissed without prejudice, any further amendment shall eliminate the redundant claim.